Mary **TAYLOR** et al., Plaintiffs-Appellants,

v.

The **CITY OF MILLINGTON**, a municipal corporation formed under the laws of the State of Tennessee, et al., Defendants-Appellees.

No. 72–1817.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 15, 1973.

Decided April 18, 1973.

David Lambert, Memphis, Tenn., for plaintiffs-appellants.

James W. Watson, Memphis, Tenn., for defendants-appellees; Watson, Lewis & Knolton, Memphis, Tenn., of counsel.

Before WEICK, CELEBREZZE and PECK, Circuit Judges.

PER CURIAM.

The suit in the District Court was a class action to desegregate two public housing projects operated by the Millington Housing Authority of Millington, Tennessee [MHA], one of which projects, known as the Bill Knight Road project, was located within the city limits, near a school attended by all white pupils, and was occupied entirely by white tenants. The other project was located outside the city limits, near an elementary school whose pupils were all Negroes, and was occupied entirely by Negro tenants. Both schools have since been desegregated.

The District Court found that MHA had initially assigned tenants to the two projects based entirely on race and that it continued to do so until the adoption of the Civil Rights Act of 1964. After passage of that statute MHA instituted a "Freedom of Choice" policy whereby white and Negro applicants were permitted to select the particular project in which they desired to live. Under this policy white applicants continued to select the all-white project, while Negro applicants continued to select the all-Negro project, and both applicants were encouraged to do so by MHA.

HUD adopted a regulation for the assignment of eligible applicants to dwelling units on a community-wide basis, and implemented it by a circular dated July 10, 1967, requiring MHA within ninety days to adopt a plan setting forth assignment policies which would require selection of tenants on a non-discriminatory basis.

MHA, by resolution, adopted such a plan on October 10, 1968, but has done very little to implement such plan until the present suit was filed.

The District Court found that the policies of MHA operated to segregate the races and were in violation of law. The Court said, however,—

". . . that there has been no malevolent intent or even intentional discrimination practiced by the defendants before us in the sense of invidious, active and willful acts directed against these plaintiffs by reason of their race."

The Court also found there had been some discrimination in the all-Negro project, which discrimination was not racial but it delayed acceptance of applications of some of the plaintiffs.

The Court, relying on Brown v. Board of Educ., 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and the Civil Rights Act, entered an injunction enjoining the defendants from maintaining a policy of segregation in the two housing projects and mandatorily ordering it to treat all applications of black applicants in equal fashion with those of white applicants, having due regard for lawful preferences and priority considerations allowable under HUD guidelines with regard to space in the Bill Knight Road project.

The Court, although finding that there was no evidence of damage, awarded $50-damages to Novella Taylor, and $50-damages to Rosa Cobbs. It also assessed an attorney's fee of $400 and costs against the defendants. By order subsequently entered, the Court ordered $50 to Mary Emma Taylor instead of Novella Taylor.

Significantly, the Court did not find that any of the plaintiffs had ever specifically requested assignment to the all-white project.

Plaintiffs filed a motion to amend and clarify the findings of the District Court. The District Court, in its order acting thereon, reiterated that—

". . . defendants must adhere to applicable, proper and legal H.U.D. regulations and requirements relative to its further course of rental units and they must treat all black applicants equally with white."

The Court did not order the defendants to place any particular plaintiff in any particular unit, but retained jurisdiction for a period of one year in order to insure that the intendment of its order would be carried out. The Court suggested to the defendants and their counsel, the following:

"(1) [that] they review existing applications promptly and place them in order of preference, priority, and time of filing and that they make the result of such review available to plaintiffs' attorney and to the Court.

"(2) that they furnish a copy of their review to the Housing and Urban Development office having jurisdiction over compliance to the guidelines of Millington Housing Authority for its approval and/or suggestions together with a copy of this order and the Court's Memorandum Opinion."

This request was complied with and the defendants so reported to the Court. Since the community-wide list was prepared, a total of nine vacancies occurred in the projects; six were filled with black applicants, and three with white applicants. Of the six black applicants, three were rented units in the formerly all-white project and the other three went to the all-black project. No white applicants have as yet expressed willingness to be assigned to the all-black project.

In their appeal, the plaintiffs do not complain about the injunction and mandatory order entered by the District Court; their complaint is that the orders do not go far enough to integrate the races in both projects. We would question the authority of the District Court to uproot the present tenants living in both projects, and because of their race, to assign them to different projects in order to effect a racial balance or quota. We think the District Court has chosen the right course to retain jurisdiction and to compel compliance with HUD regulations and policies, which should

ultimately operate to further integrate the races.

The judgment of the District Court is affirmed except as to the award of $50-damages to each of two plaintiffs, which awards are vacated.